Argued 5 April; decided 30 April, 1898.

## SECURITY SAVINGS CO. v. MACKENZIE.

[ 52 Pac. 1046 ]

| 33 | 209 |
|----|-----|
| a36 | 92 |

| 33 | 209 |
|----|-----|
| 41 | 318 |
| 33 | 209 |
| e45 | 342 |
| e45 | 343 |
| 33 | 209 |
| f48 | 132 |

1. Equity Jurisdiction — Foreclosing Bond for Deed.— A court of equity has jurisdiction of a suit to foreclose the interest of an obligee in a bond for a deed of real estate whether the plaintiff is in possession of the property or not, and the provision of Hill's Ann. Laws, § 504, requiring such possession by one seeking to determine an adverse interest in land, is not applicable.

2. Idem.— A failure to tender performance before suit is no defense to an action by a vendor who has given a bond for a deed of real estate to have the equitable interest of the purchaser barred and foreclosed.

3. Tender — Costs.— A failure of a vendor to make a tender of performance before instituting suit to foreclose the equitable interest of the vendee under a bond can only affect the question of costs; and, if such failure is not made a defense, the costs should abide the result.

4. Strict Foreclosure.— Section 414 of Hill's Ann. Laws, providing for sale and redemption of mortgaged realty, has reference only to the foreclosure of liens that are security for debts, and does not apply to a suit to bar the equitable interest of the grantee in a bond for a deed.

From Multnomah :   Loyal B. Stearns, Judge.

Bill by the Security Savings and Trust Company against William Mackenzie to bar the latter's interest under a certain contract to convey real estate.   There was a decree for plaintiff.

Affirmed.

For appellant there was a brief and an oral argument by *Mr. Francis D. Chamberlain*.

For respondent there was a brief over the name of *Dolph, Mallory & Simon*, with an oral argument by *Mr. Joseph Simon*.

Mr. Justice Bean delivered the opinion.

This is a suit commenced April 13, 1895, to foreclose the equitable interest of an obligee in a bond for a deed of real estate. The complaint alleges that on October

33 Or.—14.

15, 1894, John Hale and wife, who were then the owners and in possession of the property in question, conveyed the same to the plaintiff, and that it immediately entered into, and ever since has been in, possession, thereof, and that the defendant wrongfully claims an estate therein adverse to the plaintiff, by reason of a bond for a deed executed by Hale and wife to him in July, 1891, whereby they covenanted and agreed to convey the property in question to defendant on payment of the sum of $2,500 and interest on or before the 1st day of July, 1894, and the performance of certain other conditions ; that defendant has not paid such purchase price, or any part thereof, except the sum of $500, but has made default therein. A copy of the bond is annexed to and made a part of the complaint.   It is in the penal sum of $6,000, and contains the conditions usual in such instruments.   The answer denies the possession of the premises by the plaintiff, and, as an affirmative defense, alleges that, immediately upon the delivery of the bond, the defendant entered into and has ever since been in the sole possession of the property ; that he has made sundry payments of principal and interest on the bond ; and that neither the plaintiff nor the Hales ever demanded from him any money as due on said bond, or ever declared the defendant in default thereon, nor has any suit ever been instituted to foreclose said bond or defendant's interest in said land.   A reply having been filed, the case was tried, and a decree entered requiring defendant to pay the balance of the purchase price of such property, with interest thereon at 7 per cent. per annum from the 1st day of January, 1894, within 60 days after the date of such decree, and further decreeing that, in default thereof, he be barred and foreclosed of any right, title, or interest therein, from which decree the defendant appeals.

1. It is claimed that the decree ought to be reversed, and the complaint dismissed, because the plaintiff failed to show such a possession of the property in question at the time the suit was instituted as to entitle it to maintain a suit under section 504 of the Code, to determine an adverse interest in real estate. The evidence upon this point shows that the premises were when the bond was given, and at the time the suit was commenced, vacant, unimproved, uninclosed and unoccupied city lots, and never had been in the actual possession of either the plaintiff or defendant. If therefore, this was a suit under the section referred to, there might be room for argument as to whether the constructive possession of such property which follows the legal title would be sufficient to sustain the suit. But, in our opinion, the statute in question has no application to a case of this character. The remedy sought and the relief granted have always been within the jurisdiction of a court of equity. Although the complaint contains allegations indicating that it was framed under the statute, the relief sought is, in effect, a decree barring and foreclosing the equitable interest of the defendant under the contract in question, and this belongs to one of the well-recognized grounds of equitable jurisdiction. Under an agreement for the sale of land, the vendor has, under the doctrine of equitable conversion, a so-called " equitable lien " upon the property for the unpaid purchase money ; and courts of equity have always exercised jurisdiction in cases arising under such contracts to enforce such lien and foreclose the rights of the delinqent vendee : 1 Ping. Mortg. § 308 ; 3 Pom. Eq. Jur. § 1260. Independent, therefore, of any statute, the court had jurisdiction, whether the plaintiff was in possession or not.

2. Again, it is claimed that the complaint should be

dismissed, because there is neither allegation nor proof
that plaintiff or the Hales ever offered to perform their
part of the contract.   A sufficient answer to this conten-
tion is that the case at bar is neither a suit for the spe-
cific performance of the contract nor for the rescission or
cancellation thereof, but one to enforce the right of the
vendor to have the equitable interest of the vendee barred
and foreclosed ; and, while in such case there is a con-
flict in the authorities, it is believed to be the better rule
that a failure to tender performance before suit is no de-
fense : *Freeson* v. *Bissell*, 63 N. Y. 168.

3. A failure in this regard can only affect the question
of costs which is always in the discretion of the court.
If a defendant in such a suit should rely upon the want
of such an offer, and there should be no unjustifiable re-
sistance to taking a decree by the plaintiff, doubtless the
court would require the plaintiff to pay all the costs of
the proceeding.   But no such defense is made here.   On
the contrary, the case has been stubbornly contested
throughout on wholly technical grounds, entirely incon-
sistent with the idea that a tender would have been of any
effect, and therefore the costs must abide the result :
*Lewis* v. *Hawkins,* 90 U. S. (23 Wall) 119 ; *Morris* v. *Hoyt,*
11 Mich. 9 ; *Seeley* v. *Howard*, 13 Wis. 336.

4. And, finally, it is contended that the decree is erro-
neous, because it does not order the land sold as on fore-
closure of a mortgage with right of redemption to the de-
fendant.   But, as we understand the law, a decree of
strict foreclosure may properly be rendered in a case of
this character : 2 Jones, Mortg. § 1541.   Mr. Pomeroy,
speaking of the rights and equities of a vendor and vendee
under a contract for the sale of land, says that, until the
terms of the contract are complied with, " the legal title

remains in the vendor as his security; or, as it is otherwise expressed, he has a lien upon the vendee's equitable estate as security for payment of the purchase money according to the terms of the agreement. Practically, this lien consists in the vendor's right to enforce payment of the price by a suit in equity against the vendee's equitable estate in the land, instead of by means of an ordinary action at law to recover the debt. In England the vendor's equitable remedy consists in a suit in the nature of a strict foreclosure, by which the vendee is decreed to pay the price within a limited time; and, in default of such payment, the contract is canceled, the vendee's equitable estate is foreclosed, and the vendor's legal estate becomes again absolute. In the United States the same mode of enforcing the lien by a suit in the nature of a strict foreclosure is pursued. Another mode seems to be recognized, at least in some of the states, by which the vendee's equitable estate under the contract is sold in pursuance of a judicial decree. Such a sale would operate as an assignment of the vendee's rights under the contract, and would not be a cancellation of the contract itself": 3 Pom. Eq. Jur. § 1260, note 2. See, also, *Button* v. *Schroyer*, 5 Wis. 598; *Baker* v. *Beach*, 15 Wis. 108; *Landon* v. *Burke*, 36 Wis. 378; *McIndoe* v. *Morman*, 26 Wis. 588 (7 Am. Rep. 96); *Vail* v. *Drexel*, 9 Ill. App. 439.

It is claimed, however, that this doctrine is abrogated by section 414 of the Code, and that a decree in such suit must order the land sold in the manner provided by law for a sale under execution to satisfy the balance due on the purchase price. But that section has reference to the foreclosure of liens for the security of some debt, while the vendor's so-called "lien" under a contract for the sale of land is not strictly a lien at all, but merely an equitable right "to compel the vendee to make payment of the purchase money within a specified time, or else be

barred of all right under the contract." 3 Pom. Eq. Jur. § 1262. His right in this regard is analogous in many respects to the right of a purchaser at foreclosure sale to compel a subsequent lien creditor, who was not made a party to the suit, to redeem. In such case a court of equity will compel the creditor to exercise his right of redemption within a reasonable time, or, in default thereof, be as effectually foreclosed of his equity of redemption without sale as if he had been made a party to the original decree. *Parker* v. *Child*, 25 N. J. Eq. 41 ; *Shaw* v. *Heisey*, 48 Iowa, 468. It is true, the right of a vendor under an agreement for the sale of land is often designated and generally spoken of in the books as a lien ; but an examination of the authorities will show that the term is but another mode of expressing the vendor's interest, under the settled doctrine of conversion wrought by a contract for a sale of the land. Under this doctrine, the vendee is regarded as the beneficial owner, and the vendor the holder of the legal title as security for the performance of the vendee's obligations, and as his trustee, subject to such performance ; and the so-called " lien " is simply the vendor's right to enforce his claim for the purchase money against or out of the vendee's equitable estate, by means of a suit in equity. The whole doctrine of conversion and the rights of vendor and vendee thereunder is purely equitable and independent of any statute, and we know of no reason why it should not be enforced in this state according to the common-law rules governing such matters. In the light of this doctrine, a vendor under such a contract has a right, if he chooses, to go into a court of equity upon the default of his vendee, and foreclose the latter's equitable interest in the land ; and in such suit the court may either decree a strict foreclosure or a sale of the land, as the equities of the case may suggest. *Vail* v. *Drexel*, 9 Ill. App. 439. The de-

cree in this case was in the nature of a strict foreclosure, and, in our opinion, was fully warranted by the facts; but it should have required the plaintiff to convey to the defendant the property in question in fee simple, free and clear of all incumbrances, by a good and sufficient deed, with general warranty of title, as stipulated in the bond, in case of the payment of the balance due on the purchase price within the time limited. With this modification, the decree will be affirmed.

AFFIRMED.